May it please the Court. I'm Jerry Levine, and I represent the petitioner in this matter. Very briefly, regarding what Your Honor has suggested, the main issue that I wish to bring up to you this morning is the fact that we're not asking this Court to decide a discretionary issue. That seems to be tantamount in everybody's minds. We're asking the Court to decide the constitutional issue of due process. Our client ought to be entitled to file a brief at the BIA before the discretionary issue is decided by the BIA. A brief is all-important. This Court, in their own rules, 42-1, I believe, actually provides for sanctions when you don't prosecute a case properly. The BIA's own manual spends some 20-odd pages describing the value and encourages everyone to file a brief. In this case, because of the ineffective assistance of counsel, a brief was not filed on behalf of the petitioner. A brief was filed on behalf of the government. Therefore, we argue that the petitioner was denied his due process right to have a brief filed on his behalf. Counsel, how do you – you've met all the grounds for Lozada, but how do you show – what is the plausible grounds for relief that your client can show? Well, the plausible grounds, Your Honor, is that he has a prima facie case. He clearly – there's no argument that he meets the first three without question. And the fourth, the discretionary issue is the only issue that needs amplification. And that's what legal briefs, Your Honor, are all about. Well, how could he meet that? He would meet that by showing, for example, that if he is sent out of the country, his young daughter will be deprived for her lifetime of a father. This is exactly what Petitioner went through when he came to this country when he was two years old and has been here for 20-odd years being raised without a father. And the fact that his – But the daughter is being raised by the mother and the grandparents. Although that's better than some people, but you can't – there's no substitute for being – How much time does he spend with – He spends, Your Honor, as much time as he's being allowed to spend. Which is? Well, he spends more and more time all the time. At the time of the original hearing, he was spending a few hours a week because he was in school and the grandparents were not allowing him to see him. But he has tried as best as he's able to to see his daughter as much as he can. He absolutely refuses, for example, to entertain adoption or giving up any rights. He says it's his daughter. He intends to raise his daughter. He does not want his daughter to have to go through what he's gone through, being raised in a single-family home since he was two years old for the last 20 years. Do you think this really meets the exceptional and extremely unusual hardship? We face so many of these cases that are really kind of wrenching, where they're taken away from a family in which everyone's there. And yet we don't – we find that's not under this new standard. Exceptional and extremely unusual hardship. I understand that that's a very high standard to meet, but we believe that this does meet that standard because most of the cases that I'm familiar with and I've seen don't come to the standard of where it's absolutely a certainty that if this young man is sent back to his country, because of the circumstances with the mother and the grandparents, there is no way that this child will ever be able to have any relationship whatsoever with his father. The grandparents and the mother, who is now semi-estranged from the petitioner, absolutely – Just semi-estranged? Well, they're not together anymore. They're out. They've gone their separate ways. They have different lives. Their relationship didn't work out, unfortunately. But they do allow him to see the child. And the reason that this meets, I believe, the exceptional and extreme hardship standard, which I agree is extreme and tough, is because of the fact that this is a forever situation. In most cases that I'm familiar with, the parents – there will be some continuing relationship. These parents – I mean, this mother and the grandparents, particularly, who are raising the child now, will not allow this person to – the daughter to go down to Mexico if this gentleman is sent back to Mexico. There's no way that the gentleman will be able to come back to the United States that we're aware of. Are you making any argument about voluntary departure? Well, he was given voluntary departure. He has good moral character, and he is – he has been awarded the remedy. I thought the BIA didn't give him voluntary departure. I thought the IJ did. The IJ gave him voluntary departure. That's correct, and the BIA didn't give him anything. Did not. Did not give him anything. We, of course, believe that the IJ was correct in that respect. There's no – Does this require a remand? I'm sorry? Would that require a remand to the BIA? I believe that would also require a remand. But we also would urge the Court, in addition to remanding for – to consider voluntary departure, we believe that he also at the same time ought to be permitted the petitioner to file a brief so that he has every right afforded to him. These things are forever. When you send a young man who's never lived but a year or two of his life to a strange country after 20 years, that's serious business. And to send him out of this country after he's built a life up here, has a U.S. citizen daughter here, without affording him every right – Does hardship to him count? Hardship to him does not count. Yeah. But the hardship to him is being foisted onto his U.S. citizen daughter, and that's who's going to pay the penalty here because of what's happened to her father totally involuntarily. He didn't come crawling across the border when he was 2 years old. He was brought here totally innocent, spends his whole life here, goes all the way through school, is a high school graduate. It's the kind of thing that, you know, that the Congress is toiling with as we speak, trying to – has a remedy for that situation, assuming he's still here when the remedy is finally given. It's been recognized that someone who spent his whole life here came here innocently and has finished a high school education in the United States ought to be informed of the right. Counsel, did he receive a stay from our court pending the determination of this case? Yes, Your Honor. Thank you. I have nothing further, Your Honor. Unless you have questions, I'd like to reserve the last few minutes for rebuttal if I need it. You may reserve for rebuttal. Thank you. May it please the Court. My name is Luis Perez. I represent the Respondent. Your Honor, the issue before the Court is whether the Board of Immigration Appeals have used its discretion when it denied Mr. Dominguez-Olivas' motion to reopen based on ineffective assistance of counsel. Counsel, is it not correct that when there is a failure to file a brief, we presume prejudice? And you've got to rebut that. That's when the alien's counsel does not appraise the alien or fails to file a petition for review before this Court. But from my understanding, this Court's ruling, Ramirez-Durazo v. INS, when a counsel fails to file a promise brief, the Court has established that in order to establish prejudice, the counsel, the petitioner has either to establish that the Board did not consider the immigration judge's decision on its merits, or that he would have proffer arguments that would have changed the outcome of the case. What's your case for that? That's Ramirez-Durazo v. INS, 794 F. Second at page 500-501. It is cited in our brief and also in Petitioner's brief. Specifically on page 15 of our brief and on page 29 of Petitioner's brief. What's the name of the case again? It's Ramirez-Durazo v. INS, 794 F. Second, 491 at page 501. It's a decision from this Court in 1986. Now, if we take a look at the next case. But we look at the Geringer case. Is that contrary? The Geringer case deals with the counsel's failure to file a petition for review in a timely manner. So the Court presumes prejudice in those instances, because the alien was deprived of judicial proceedings. Now, the Court goes further and says, had the alien in Geringer filed a petition for review, the Court would have reviewed it. Our contention is that because the Court would not have reviewed the underlying matter in this case had the Mr. Dominguez-Oliva's counsel filed a petition for review, because the underlying matter was a discretionary denial of cancellation or removal, we are arguing that Geringer does not apply to this case. And that's basically our argument with that sense. Now, going back to the motion to reopen file before the Board, Mr. Dominguez-Oliva's basically made two arguments in terms of demonstrating his prejudice. He said that he did not have the opportunity to be heard and that his constitutional right to an appeal was deprived. Now, in Geringer, this Court held that aliens do not have a constitutional right to an appeal. So if we take a look at the Board's April 4, 2002, decision, it is clear that the Board's structure is decision in the context of Ramirez-Durazo. Instead, the Court specifically says that despite the counsel's failure to file the brief, because the Board fully analyzed Respondent's case, the record, a three-member board panel, held that the Mr. Dominguez-Oliva's did not establish exceptional and extremely unusual prejudice. The Board did notice the fact that the aliens' counsel had failed to file the brief. But instead of summarily dismissing the case, which was the bargain that had happened in Vargas, here the Board considered the decision on the merits and reviewed the entire record. And with respect to the second portion of the Board's decision that says that even if Mr. Dominguez-Oliva's counsel did not appraise him of the fact that he had filed a petition for review within 30 days, because this Court would not have had jurisdiction over the underlying matter, then no prejudice or at least no prejudice has been established. Now, we are arguing that the presumption of prejudice is not established. So he had to proffer some indication in his motion to reopen to establish or give some hint on how the outcome of the proceedings would have been different. Because of this, Your Honor, we ask the Court to affirm the Board's decision as one that is not an abuse of discretion. If the Court doesn't have any questions. And what about the voluntary departure? It does seem that he did suffer prejudice by the failure to file the brief, which would have told his time for voluntary departure. He wasn't aware of it, and now he's lost it. Shouldn't we remand to let the BIA consider that? Well, Your Honor, he did not argue that in his motion to reopen. He did not bring the voluntary departure. He had voluntary departure. Yes. He didn't. I mean, why would he know that he needed to re-argue it? He had it. Shouldn't he still have it? The voluntary departure is a discretionary grant. I know that the Board did not address it. Yeah, it didn't address it. That's why I'm suggesting. He didn't deny it. He didn't demand it and let it address it, given the particular circumstances of this case. Just for the purpose of extending the voluntary departure? Well, to consider whether it should be extended, given that it otherwise would have been told. Because the government's problem will be that because he did not ask for it, or not even in the motion to reopen stage, which is the stage that we are right now, it will be an argument made for the first time. But he didn't know he had to ask for it because he already had it. No. He wasn't. I.J. granted him voluntary departure. He's not going to appeal that grant. I understand that. I'm only pointing out that. I understand that with respect to the notice of appeal. And you're absolutely right. I'm just pointing it out with respect to the motion to reopen. Because that was not before the Board. He did not ask the Board to extend his voluntary departure in the motion to reopen. Well, we're looking at the merits. Is there any reason why he wouldn't have been granted the voluntary departure by the BIA if they considered it? No. No. Well, why shouldn't we remand it for them to consider it, then? It's — I'm just pointing to the Court the fact that because he did not ask the Board that, the Board did not err in granting it. Of course, you know, it's the only argument that I can make to the Court with respect to that. Counsel, the reason I asked whether there was a stay granted pending these proceedings, there is a recent case from our court which says that the standard for granting the stay is essentially the same as for voluntary departure. Tell him. And in that case, they just went ahead, I think, at our level and granted the voluntary departure. Would the government oppose our just doing that and cleaning it up? Granting him voluntary departure? In — I think that in El-Henry, what the alien had asked was for an extension or for a stay in the voluntary departure. But the problem here is that the voluntary departure already expired. In El-Henry, the voluntary departure — I'm just asking, what's wrong with a little equity here? Your Honor, I'm not saying it's wrong. I'm only — I'm only pointing to the Court that he did not ask the Board that in the motion to reopen. I'm not — Well, I understand that. I'm — certainly we're not arguing that he doesn't qualify for voluntary departure. That is not our argument. All right. Thank you. Thank you, counsel. I just — if I may just make one comment. We certainly want the case remanded for voluntary departure back to the BIA, but we would urge the Court to not forget that this is this gentleman's last chance. Voluntary departure, although good as a last resort, when the case is being remanded, the BIA — we urge you to ask the BIA to allow him to file a brief at the same time to be able to argue the merits of his case without having his constitutional right to due process denied, because immigration matters when it's literally a matter of life and death, giving or taking away of a father from a young U.S. citizen. We think that that requires every bit of due process that the Court can eke out for these poor people. What about Judge Fletcher's suggestion about our just simply cleaning up the voluntary departure thing at this stage? Well, I — we would certainly not reject doing that, but we — at the same time, we would also still want you to remand the case back to allow the Court to have the discretionary call. We understand that they're the ones that have to make the discretionary call. You're no longer allowed to do that. And it's that right that we urge you to allow us to take advantage of, Your Honors. All right. Thank you, counsel. Thank you for a good argument on both sides. Dominguez-Lewis v. Ashcroft will be submitted.
judges: B. Fletcher, Hug, Wardlaw